IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SIPLAST, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-cv-1320-E |
| | § | |
| EMPLOYERS MUTUAL CASUALTY CO., | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

This insurance coverage dispute is before the Court on cross-motions for summary judgment (Doc. Nos. 21 & 24). At issue is whether Defendant has a duty to defend Plaintiff in an underlying lawsuit. The Court carefully considered the motions, the responses, and the replies, as well as the joint appendix, applicable law, and any relevant portions of the record. For reasons that follow, the Court denies Plaintiff's motion and grants Defendant's motion.

### Background

The following allegations are taken from Plaintiff Siplast, Inc.'s complaint. Siplast develops and manufactures roofing and waterproofing systems. Defendant Employers Mutual Casualty Company (EMCC) sold Siplast yearly commercial general liability insurance policies for the time period from January 1, 2012 to January 1, 2017. The policies require EMCC to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [EMCC] will have the right and duty to defend the insured against any 'suit' seeking those damages."

1

In October 2018, the Archdiocese of New York, Cardinal Spellman High School, and the Catholic High School Association (collectively "the Archdiocese") filed the underlying action against Siplast and Vema Enterprises in the Supreme Court of New York, County of Bronx.[1] In 2012, the Archdiocese purchased a Siplast Roof System for its Cardinal Spellman High School property in the Bronx. Vema installed the roof system. The roof system is covered by a "Siplast Roof/Membrane Guarantee." In November 2016, school officials observed "water damage in the ceiling tiles throughout the premises." Siplast concluded that the school's claim was not covered under the guarantee. The underlying plaintiffs hired a consultant to investigate the leaks and water damage. The consultant's report "noted significant issues with both the workmanship and the materials that were compromising the entire roof membrane and system." In July 2018, counsel for the underlying plaintiffs sent Siplast a formal notice of its intent to replace the roof and hold Siplast liable for such costs. Siplast gave notice of the claim to EMCC. EMCC later issued a letter denying coverage, including its duty to defend Siplast.

In this lawsuit, Siplast asserts claims against EMCC for declaratory relief, breach of contract, and violations of the Texas Insurance Code. Siplast seeks a declaration that EMCC is obligated to defend it in the underlying lawsuit. It further contends that by refusing to defend it, EMCC has breached the insurance contract and violated Chapter 542 of the insurance code. Siplast also alleges EMCC has violated sections 541.060 and 541.061 of the insurance code.

EMCC asserted a counterclaim for declaratory relief. It seeks a judgment declaring that it has no duty to defend or indemnify Siplast in the underlying lawsuit.

---

[1] The instant case was filed in the Northern District of Texas because Siplast has its principal place of business in Irving.

**Motions for Summary Judgment**

1. Siplast

Siplast has filed a motion for partial summary judgment.[2] It argues it is entitled to summary judgment on its claims for declaratory judgment and breach of contract. Siplast asks the Court to declare that EMCC is required to provide Siplast with a defense in the underlying action. Siplast also seeks a summary judgment that EMCC breached the insurance policy by failing to defend Siplast in the underlying action and is entitled to recover its defense costs and expenses in an amount to be determined. EMCC promised to defend Siplast against any suit seeking damages because of property damage caused by an occurrence during the policy period. Siplast maintains these elements are met and EMCC has a duty to defend. According to Siplast, no exclusion applies.

2. EMCC

EMCC has also moved for summary judgment. It asserts it is entitled to judgment as a matter of law on all of Siplast's claims. It argues the record conclusively establishes that it has no duty to defend or indemnify Siplast in the underlying lawsuit. It seeks a declaration of no coverage under the policies, which it asserts also entitles it to summary judgment on Siplast's breach of contract and insurance code claims.

**Applicable Law**

To be entitled to summary judgment, a party must show there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). On cross-motions for summary judgment, the court reviews each party's motion independently, viewing the

---

[2] Both parties requested oral argument on the face of their summary judgment briefs. The Court declines the request. *See Garza-Trevino v. New England Fin.*, 320 F. App'x 203, 206 (5th Cir. 2009) (parties in Fifth Circuit do not have absolute right to oral hearing on summary judgment motions).

evidence and inferences in the light most favorable to the non-moving party. *Baker Hughes, Inc. v. U.S.*, 943 F.3d 255, 259 (5th Cir. 2019).

We apply Texas law in this diversity action. *See Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 363 (5th Cir. 2008). In exchange for premiums paid, commercial general liability insurers typically promise to defend and indemnify their insured for covered risks. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008). The duty to defend is distinct from, and broader than, the duty to indemnify. *Id.* An insurer may have a duty to defend, but eventually, no obligation to indemnify. *Id.* at 490–91. Texas strictly follows the "eight corners rule," meaning the duty to defend may only be determined by the facts alleged in a third-party plaintiff's petition and the coverage provided in the policy. *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 596 (5th Cir. 2011); *Zurich Am.*, 268 S.W.3d at 491. A court must focus on the factual allegations that show the origin of the damages rather than on the legal theories asserted in reviewing the underlying pleading. *Nat. Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). The court should liberally construe a plaintiff's allegations in favor of coverage and resolve all doubts about the duty to defend in favor of the insured. *Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 602 (5th Cir. 2006).

An insurer must defend its insured if the third-party plaintiff's factual allegations potentially support a covered claim, while the facts actually established in the underlying suit determine whether the insurer must indemnify its insured. *Zurich Am.*, 268 S.W.3d at 490. In general, an insurer's duty to indemnify cannot be determined until after an underlying suit has been resolved. *Columbia Cas. Co. v. Ga. & Fl. RailNet, Inc.*, 542 F.3d 106, 111 (5th Cir. 2008). However, "[l]ogic and common sense dictate that if there is no duty to defend, then there must be no duty to indemnify." *American States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998).

4

The burden is on the insured to show that a claim against it is potentially within the scope of coverage under the policies; however if the insurer relies on the policy's exclusions it bears the burden of proving that one or more of those exclusions apply. *Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 723 (5th Cir. 1999).

## The Underlying Complaint

In the underlying suit, the Archdiocese alleges that in July 2011, it entered into an agreement with Vema to furnish and install a new roof at Cardinal Spellman High School. Vema warranted that it would perform the work in a first-class manner and use only brand new material of high quality. Vema stated that it guaranteed all phases of work against defects. Vema installed a roof membrane manufactured by Siplast.

On February 28, 2012, Siplast issued a Roof Membrane/System Guarantee ("Siplast Guarantee") covering the premises. In the Siplast Guarantee, Siplast guaranteed to the Archdiocese that the new roof membrane and system installed at the school would "remain in a watertight condition for a period of 20 years, commencing with the date hereof; or SIPLAST will repair the Roof Membrane/System at its own expense." The Siplast Guarantee was delivered by Vema to the Archdiocese.

In November 2016, officials at the high school observed "water damage in the ceiling tiles throughout the Premises after a rain storm." Both Vema and Siplast were notified of the water damage and potential leaks. In mid-November 2016, Siplast acknowledged receipt of the claims and advised the Archdiocese that the high school should contact a designated Siplast roofing contractor to address the damage and leak. Despite the work performed by Siplast's designated contractor, the high school continued to suffer from additional leaks and water damage. Vema and Siplast were notified of the leaks and damage.

On February 27, 2017, Siplast met with the Archdiocese's representatives about a possible repair plan for the school roof. Siplast admitted there were problems with the roof that needed to be addressed. Siplast scheduled a meeting at the school with Vema representatives, which took place on March 24, 2017. Vema informed the Archdiocese that, despite Vema's warranty, the leaks and any damage created thereby were the sole responsibility of Siplast under the Siplast Guarantee.

In May 2017, Siplast told the Archdiocese that it would engage a contractor to repair the leaks. In a June 9, 2017 letter to the school plaintiffs' representative, Siplast characterized its earlier repair attempts as "temporary" and advised it would not honor the Siplast Guarantee with respect to any permanent improvements of the roof.

Thereafter, a consultant hired by the Archdiocese "performed an exhaustive inspection and survey of the water penetration issues involving the roofing system." In a December 2017 report, the consultant noted "significant issues with both the workmanship and the materials that were compromising the entire roof membrane and system." The complaint alleged the roofing membrane and system has failed of its essential purpose and the only way to remediate the issue is to replace the failed membrane and system with a new one. The consultant estimated the total cost of remediation and replacement at about $5,000,000.

The underlying plaintiffs assert claims for breach of contract and breach of warranty against Vema and a claim for breach of guarantee against Siplast. The Archdiocese alleges Siplast materially breached its obligations under the Siplast Guarantee by, among other things, failing to correct defects in the roof membrane, system and flashing when called upon by the Archdiocese to do so and failing to abide by the terms of the Siplast Guarantee. As a result of Siplast's material breaches of the Siplast Guarantee, the Archdiocese will be forced to replace the roof well in

6

advance of the 20-year-plus expected useful term at a cost of approximately $5,000,000. The Archdiocese asserted it was entitled to a judgment against Siplast for "damages in an amount to be determined at trial, but believed to be in excess of $5,000,000."

### The Insurance Contract

The policies in question contain the following provisions:

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. Insuring Agreement
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

   ****

   b. This insurance applies to "bodily injury" and "property damage" only if:
      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

In the "Definitions" section of the policies, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

### Analysis

EMCC argues that Siplast has not met its burden to demonstrate that the recovery sought against it in the underlying lawsuit is for an "occurrence" as defined in the policies. It contends that although the word "accident" is not defined in the policies, Texas courts construe it to mean negligently caused losses. If an insured's acts are voluntary and intentional, the results or injuries

7

are not caused by an accident and the event is not an "occurrence." EMCC asserts that the underlying lawsuit is for Siplast's failure to honor its Siplast Guarantee. According to EMCC, the underlying plaintiffs have not alleged any facts to show that Siplast was negligent in its breach of the Siplast Guarantee. Rather, Siplast's refusal to honor its guarantee was deliberate and purposeful. As such, EMCC argues, it owes no duty to defend or indemnify under the policies.

In its summary judgment motion, Siplast contends the allegations in the underlying lawsuit trigger EMCC's duty to defend it. Siplast maintains the underlying plaintiffs have alleged claims based on an "occurrence" because they allege they sustained damage because of faulty work and products. They do not allege that Siplast expected or intended any damage at the high school. According to Siplast, its failure to honor its guarantee is irrelevant to the issue of whether there was an occurrence. Any breach of the Siplast Guarantee did not cause water to leak into the school or result in property damage.

Both parties cite the Texas Supreme Court's decision in *Lamar Homes, Inc. v. Mid-Continent Casualty Company*, a case decided on certified questions from the Fifth Circuit. The issue in that case was whether an insurer under a commercial general liability policy had a duty to defend its insured, a homebuilder, against the homeowners' claims of defective construction. 242 S.W.3d 1, 4 (Tex. 2007). The homeowners purchased a new home from Lamar Homes. *Id.* at 5. Several years later they had problems they attributed to foundation defects. They sued Lamar Homes and its subcontractor complaining about the defects. Lamar Homes sought a defense and indemnification from Mid-Continent under a CGL policy. When Mid-Continent refused to defend, Lamar Homes sought a declaratory judgment and recovery under the Texas Insurance Code. *Id.* The district court granted summary judgment for the insurance company, concluding it had no

duty to defend Lamar Homes for construction errors that harmed only Lamar's own product. *Id.* at 5.

The Supreme Court considered whether defective construction or faulty workmanship that damages only the work of the insured is an "occurrence." *Id.* at 7. It stated that an accident is generally understood to be a fortuitous, unexpected, and unintended event. *Id.* at 8. An intentional tort is not an accident and thus not an occurrence regardless of whether the effect was unintended or unexpected. *Id.* But a deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly. *Id.* A claim thus does not involve an accident or occurrence when either direct allegations purport that the insured intended the injury (which is presumed in cases of intentional tort) or circumstances confirm that the resulting damage was not the natural and expected result of the insured's actions. *Id.* at 9.

The court noted that the policy does not define an "occurrence" in terms of the ownership or character of the property damaged by the act or event. *Id.* The policy asks whether the injury was intended or fortuitous, that is, whether the injury was an accident. *Id.* The Supreme Court concluded that the underlying complaint alleged an occurrence because it asserts Lamar Homes's defective construction was a product of its negligence. *Id.* No one alleged that Lamar Homes intended or expected its work to damage the home. *Id.* Allegations of unintended construction defects may constitute an "accident" or "occurrence" under the CGL policy. *Id.* at 4. The court then proceeded to consider whether defective construction or faulty workmanship damaging only the general contractor's work is "property damage" under the policy. *Id.* at 9–10.

Each party contends *Lamar Homes* supports its respective position. EMCC says the case involved the right allegations and circumstances that created an "occurrence." The "occurrence"

9

existed because the underlying property damage was allegedly the product of the insured's negligence, defective performance. Thus, according to EMCC, *Lamar Homes* can be distinguished from this case. It argues that there are no assertions by the underlying plaintiffs that Siplast's conduct was anything but deliberate. Siplast's alleged liability is for its purposeful refusal to honor the Siplast Guarantee. The school plaintiffs do not allege negligent performance of the guarantee, but rather intentional breach of the guarantee.

Siplast argues that *Lamar Homes* involved allegations similar to that in the school plaintiffs' complaint. As in *Lamar Homes*, the underlying plaintiffs allege they sustained damage because of faulty work and products. They have not alleged that Siplast expected or intended any damage at the school. Siplast cites the Supreme Court's statement in *Lamar Homes* that it is a false assumption that the failure to perform under a contract is always intentional. *See id.* at 8. Siplast argues there are no allegations that it intentionally provided the underlying plaintiffs with defective products or expected or intended any of the alleged property damage to the school.

The Court agrees with Siplast on this issue. The origin of the property damage the underlying plaintiffs allege is defects with the workmanship and materials that comprised the roof membrane and system. As in *Lamar Homes*, there is nothing in the underlying pleading that alleges Siplast intended or expected its roofing system to fail. *See id.* at 9. It is immaterial that the legal theory the Archdiocese asserts against Siplast is for breach of its Siplast Guarantee. The underlying complaint alleges property damage caused by an accident or occurrence.

That does not end the inquiry. EMCC asserts there are exclusions contained in the policies that unambiguously preclude coverage as a matter of law. The policies provide that the insurance does not apply to "'Property damage' to 'your product' arising out of it or any part of it." Nor does the insurance apply to "'Property damage' to 'your work' arising out of it or any part of it

10

and included in the 'products-completed operations hazard.'"  "Your product" is defined as "Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by: (a) You."  "Your work" is defined as "Work or operations performed by you or on your behalf."  It includes "Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work.'"

A CGL policy generally protects the insured when its work damages someone else's property.  *Wilshire Ins. Co. v. RJT Constr., LLC*, 581 F.3d 222, 226 (5th Cir. 2009).  The "your work" exclusion reflects the intent of the insurance industry to avoid the possibility that coverage under a CGL policy will be used to repair and replace the insured's defective products and faulty workmanship.  *Atain Specialty Ins. Co. v. Siegen 7 Devs., L.L.C.*, No. 19-30827, 2020 WL 4278908, at *3 (5th Cir. July 24, 2020).

EMCC contends Siplast is not being sued for damage to any property other than its own work and products the underlying plaintiffs seek to replace.  It argues the Archdiocese is seeking to recover from Siplast only the cost of a replacement roofing system, not any damage that resulted to the school from the defective roof.

Siplast responds that the underlying complaint clearly alleges property damage to the interior of the high school.  For example, it states that in November 2016, school officials observed water damage in the ceiling tiles at the school.  The underlying complaint further alleges that after Siplast's designated contractor came out to work on the roof, the school continued to suffer from additional leaks and water damage.  According to Siplast, because this interior damage to the school is separate from any damage to the Siplast materials on the school roof, EMCC cannot meet its burden to show the Your Product/Your Work exclusions apply.

11

The Court concludes that although the underlying complaint mentions damage to school property other than the Siplast roofing products, the Archdiocese does not make any allegations from which the Court can conclude that it has made a claim to recover from Siplast for any damage to the building caused by the leaky roof that is separate from the damage to Siplast's product. It has sued Siplast solely based on its failure to replace the roof as required by the Siplast Guarantee. Siplast guaranteed that if the roof did not remain watertight for a period of 20 years, it would repair the Roof Membrane/System at its own expense. The Archdiocese alleges that due to Siplast's breach, it will be forced to replace the roof well in advance of that 20-year mark at a cost of "approximately $5,000,000. It does not allege that Siplast's breach caused it other damages. The "your work" exclusion precludes coverage for the cost of repairing Siplast's own work. *See Wilshire Ins. Co.*, 581 F.3d at 226 (complaint alleges insured's faulty foundation caused damage to other parts of the house that insured did not work on); *see also Building Specialties, Inc. v. Liberty Mut. Fire Ins. Co.*, 712 F. Supp. 2d 628, 647–48 (S.D. Tex. 2010) ("Your work" exclusion applies where only allegations in underlying lawsuit are of defective duct work that had to be repaired or replaced). Accordingly, the Court concludes EMCC does not have a duty to defend Siplast because the damages sought against Siplast in the underlying suit fall with the "your work/your product" exclusions in the policies. Because there is no duty to defend under the policies, there is also no duty to indemnify.

In addition, EMCC asserts that it is entitled to summary judgment on the rest of Siplast's claims. It argues that, absent a duty to defend Siplast in the underlying lawsuit, it is entitled to summary judgment on Siplast's breach of contract claim. It also asserts that because Siplast cannot prevail under a breach of contract theory, it cannot prevail on its extra-contractual claims for violations of the Texas Insurance Code. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479,

490, 492–93 (Tex. 2018) (general rule is that insured cannot recover policy benefits for insurer's statutory violation if insured does not have right to benefits under policy). Further, EMCC contends Siplast cannot recover attorney's fees, interest, costs or penalties since it is not a prevailing party.

Siplast responds that because EMCC owes it a duty to defend, EMCC's request for summary judgment on Siplast's other claims fails. Siplast does not contest EMCC's entitlement to summary judgment on Siplast's breach of contract and insurance code claims in the event there is no duty to defend or indemnify. The Court finds that EMCC is entitled to judgment as a matter of law on Siplast's claims for breach of contract and violations of the Texas Insurance Code.

In sum, the Court grants EMCC's motion for summary judgment and denies Siplast's motion for partial summary judgment. The Court declares that EMCC has no duty to defend or indemnify Siplast in the underlying lawsuit. In addition, Siplast shall take nothing by any of its claims against EMCC.

**SO ORDERED.**

Signed September 25, 2020.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE